**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**ANDREW R. PERRONG**
**1657 The Fairway #131 Jenkintown, PA 19046**

**Plaintiff,**
**vs.**

**HBW LEADS LLC ("HBW")**
**5305 RIVER RD N STE B**
**KEIZER, OR 97303,**

**JEREMY WINN, Individually and as CEO/ President / Principal Member of HBW,**
**5254 KALI ST SE**
**SALEM, OR 97306,**

**NATHAN HARPER, Individually and as CEO/ President / Principal Member of HBW,**
**12017 HOLLY LN SE**
**JEFFERSON, OR 97352,**

**ANDREW BRADLEY MCKINNEY Individually and as IT / RoboDialer Director of HBW,**
**1154 S 6TH ST**
**INDEPENDENCE, OR 97351,**

**ELITE INS LLC. ("EIL")**
**2325 Heritage Ctr Dr Ste 319**
**Furlong, PA 18925,**

**ANTHONY PERNO, Individually and as CEO / President / Principal of EIL,**

**THE ALLSTATE CORPORATION**
**1209 ORANGE ST**
**WILMINGTON, DE 19801,**

**ALLSTATE INSURANCE COMPANY**
**3100 SANDERS RD**
**NORTHBROOK, IL 60062,**

**Civil Action No.__________________**

**and**
**DOES 1 through 100, inclusive,**

**Defendants.** **Jury Trial Demanded**

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution, reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 ("Federal Question" Jurisdiction) for the *ultra vires* illegal actions and deliberate and knowing tortious activity of HBW LEADS LLC ("HBW"), JEREMY WINN, Individually and as CEO/ President / Principal Member of HBW ("WINN"), NATHAN HARPER, Individually and as CEO/ President / Principal Member of HBW ("HARPER"), ANDREW BRADLEY MCKINNEY Individually and as IT / RoboDialer Director of HBW ("MCKINNEY"), ELITE INS LLC. ("EIL"), ANTHONY PERNO, Individually and as Chief Executive Officer of EIL ("PERNO"), THE ALLSTATE CORPORATION & ALLSTATE INSURANCE COMPANY ("ALLSTATE"), and Does 1 through 100, inclusive, in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an automatic telephone dialing system ("RoboCalls") with call abandonment, and other claims, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq,* and related claims that form part of the same claim or controversy and/or under 28 U.S.C. § 1367(a) ("Supplemental" Jurisdiction). Plaintiff demands a trial by jury, and complains and alleges as follows:

## I. Introduction

1. Defendant HBW LEADS, LLC ("HBW") is a corporation incorporated in the State of

Oregon that markets and sells, *inter alia,* telemarketing lead generation services to ALLSTATE and EIL. Its address for service of process is 5305 RIVER RD N STE B KEIZER, OR 97303.

2. Defendant ELITE INS LLC. ("EIL") is a corporation incorporated in the State of Pennsylvania that markets and sells, *inter alia,* Allstate insurance to individuals throughout the greater Philadelphia and Montgomery County area. Its principal mailing address is located at 2325 Heritage Ctr Dr Ste 319, Furlong, PA 18925.

3. Plaintiff brings this action to challenge the Companies' practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Companies' and Companies' agents' illegal telephone solicitations by which it markets its products and services, illegal RoboCalls, illegal call abandonment, and failure to maintain a Do-Not-Call policy or list in connection therewith.

4. All of the claims asserted herein arise out of Companies' illegal telephone solicitation campaign and are a common fact pattern.

## II. Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County, which lies within this judicial district, pursuant to 28 U.S.C. §118. Plaintiff received the phone calls to a 215-area code number, registered in this judicial district. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where

[plaintiff] resides because the injury did not occur when the facsimile was sent… ; it occurred when the [facsimile] was received."

## III. Parties

7. Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

8. Defendant HBW LEADS, LLC ("HBW") is a corporation incorporated in the State of Oregon that markets and sells, *inter alia,* telemarketing lead generation services to ALLSTATE and EIL. Its address for service of process is 5305 RIVER RD N STE B KEIZER, OR 97303.

9. Defendant JEREMY WINN ("WINN") is an adult individual who is the President / CEO / Principal of HBW, and upon information and belief is HBW's Primary Owner. WINN is an adult individual and citizen of the United States. As Chief Executive Officer of HBW, WINN is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in HBW's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Oregon, and nationwide.

10. Defendant NATHAN HARPER ("HARPER") is an adult individual who is the President / CEO / Principal of HBW, and upon information and belief is HBW's Primary co-Owner. HARPER is an adult individual and citizen of the United States. As Chief Executive Officer of HBW, HARPER is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in HBW's name. Such

tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Oregon, and nationwide.

11. Defendant ANDREW BRADLEY MCKINNEY ("MCKINNEY") is an adult individual who is the IT and RoboDialer director of HBW. MCKINNEY is an adult individual and citizen of the United States. As IT and RoboDialer director of HBW, MCKINNEY is responsible for the maintenance and daily operations of the VICIDIAL illegal ATDS system owned by HBW that HBW uses to violate the TCPA, work that is is technically carried out only in HBW's name. MCKINNEY's job involves daily oversight and care of equipment that HBW uses to make illegal telemarketing calls in violation of the TCPA. MCKINNEY maintains the equipment in such a state as to ensure it continues operating in violation of the TCPA, and is responsible for the TCPA compliance (or lack thereof) of HBW's systems. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Oregon, and nationwide.

12. Defendant ELITE INS LLC. ("EIL") is a corporation incorporated in the State of Pennsylvania that markets and sells, *inter alia*, Allstate insurance to individuals throughout the greater Philadelphia and Montgomery County area. Its principal mailing address is located at 2325 Heritage Ctr Dr Ste 319, Furlong, PA 18925. EIL has been in existence for a number of years and transacts business in, *inter alia*, Montgomery County, Pennsylvania, which lies within this Judicial District.

13. Defendant ANTHONY PERNO ("PERNO") is an adult individual who is the President / CEO / Principal of EIL, and upon information and belief is the EIL's Primary Owner. PERNO is an adult individual and citizen of the United States. As Chief Executive Officer of EIL, PERNO is the primary individual who reaps the benefit of the tortious and illegal conduct

described herein that is technically carried out only in EIL's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, and nationwide.

14. Defendant THE ALLSTATE CORPORATION, a Delaware Corporation, is the holding corporation for multiple ALLSTATE corporations, including ALLSTATE INSURANCE COMPANY, an Illinois Corporation, the primary corporation with which ELITE INS LLC. ("EIL") transacts business and, upon information and belief, is an agent and franchisor. Collectively, both THE ALLSTATE CORPORATION and ALLSTATE INSURANCE COMPANY are referred to as ("ALLSTATE") in the complaint. ALLSTATE also contracts with HBW LEADS, LLC ("HBW") to place calls to customers in violation of the TCPA on ALLSTATE's behalf, using ALLSTATE's name. ALLSTATE reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in HBW and EIL's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Delaware, Illinois, and nationwide. Defendant ALLSTATE is vicariously liable for actions of HBW and EIL under the Apparent Authority and Ratification theories of vicarious liability.

15. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

16. At all times herein mentioned, HBW, WINN, HARPER, MCKINNEY, EIL, PERNO, the ALLSTATE defendants, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or

constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

17. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

18. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## IV. Factual Allegations

19. In or about November 22st , 2017, Plaintiff received the first of multiple "robocall" solicitations by Defendants and/or their agents at Plaintiff's personal telephone, 215-338-3458. Plaintiff had not consented to this solicitation.

20. The unsolicited telephone call was placed to Plaintiff's personal telephone number and utilized an "automatic telephone dialing system" or "robocall," to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

21. The MCKINNEY defendant is a heavy user of the "SpiceWorks" online IT

messageboard community. On this community, MCKINNEY frequently seeks advice as to how to best set up solutions for HBW that violate the TCPA. There is no question that MCKINNEY *personally* seeks out advice in connection with his employment with HBW on this forum.

22. Substantial evidence exists online that HBW uses a ViciDial AutoDialing System to place calls to millions of individuals throughout the United States on behalf of Allstate Insurance and its agents. *See* for instance, https://community.spiceworks.com/topic/420380-open-source-pbx-and-call-center-solution, archived at https://archive.is/iM2WN , where the MCKINNEY defendant writes, "We used to use Noble, Amcat dialers ***we switched to ViciDial*** and haven't looked back. Speaking of noble they still need to come pick up the leased server. ***We have 1 DB and 1 Webserver with 24 Dialers.***"

23. Substantial evidence also exists online that HBW's system, set up and managed by MCKINNEY, has a capability of placing *between 1,000 and 2,000 calls **per second***, in fact, the MCKINNEY defendant posted in December of 2013 that he was "looking for a sip carrier that can place 2000 lines ***per second***" *See* https://community.spiceworks.com/topic/421601-2000-line-sip-carrier , archived at https://archive.is/JO120 .

24. In fact, MCKINNEY, on that *very same post*, brags about how many calls his automatic telephone dialing system can handle by posting a screenshot from NetVanta, which shows 953 active calls, 952 calls ringing, 72 agents, 222,160 calls in *one day* and 1,118,231 leads. Screenshot is to the right:

25. It is therefore evident that HBW is a flagrant TCPA violator, placing *hundreds of thousands of calls* per day in violation of the TCPA, a fraction of which Plaintiff received.

26. The calls came from the Caller ID name "HBW" and Caller ID number 312-477-0335, which answers as "HBW Leads".

27. Plaintiff pays a fixed amount of money per minute for each incoming and outgoing call on his telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff is therefore charged for each and every call he receives on his phone.

28. The first "Robocall" was answered by Plaintiff on November 22, 2017, however, nobody was on the line. This call came in at 7:44:28 PM. Such behavior is characteristic of automatic or predictive dialers as they, either due to technical/programming errors, or due to no agent being available to answer the call, simply disconnect the call. Plaintiff, however, continued to get calls about *once per second* for a total of *nine calls* on November 22, 2017, which plaintiff was inundated with and was unable to answer. The time span of the calls ranges from 7:44:28 PM to 7:44:40 PM, as per his telephone provider – nine calls over the span of twelve seconds, a number which is highly illegal and excessive.

29. Such an action by automatic "robodialers" is termed as "call abandonment" and is highly illegal. 47 CFR 64.1200(a)(7) states that it is illegal to "Abandon more than three percent of all telemarketing calls that are answered live by a person" and states that "A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." In such a case, 47 CFR 64.1200(a)(7)(i)(A) indicates that abandoned calls must provide, among other requirements, "A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or individual on whose behalf the call was placed."

30. The calls on November 22nd did not contain any of the information required under 47 CFR 64.1200(a)(7)(i)(A), and was simply "abandoned" and terminated in silence and a line disconnect.

31. After the November 22 call, Plaintiff received another two calls on November 24, from the same caller ID. The calls came in at 3:25:03 PM and 3:25:05 PM, according to telephone company records. These calls, like the previous, were answered by Plaintiff, but were also "abandoned" and were, because of such abandonment, made using a "robodialer." These calls also did not play the required information as required under 47 CFR 64.1200(a)(7)(i)(A).

32. Plaintiff continued to receive another two calls on November 25, from the same caller ID. The calls came in at 11:00:20 AM and 11:00:22 AM, according to telephone company records. These calls, like the previous, were answered by Plaintiff, but were also "abandoned" and were, because of such abandonment, made using a "robodialer." These calls also did not play the required information as required under 47 CFR 64.1200(a)(7)(i)(A).

33. Finally, Plaintiff received another call on November 28, from the same caller ID. The call was answered by Plaintiff, and Plaintiff heard a computerized noise indicating call connection, and the sounds of a call center in the background. However, Plaintiff said "Hello" over the course of about 10 seconds, after which the call was disconnected with no further information. This call was therefore "abandoned" and was made using a "robodialer." The call also did not play the required information as required under 47 CFR 64.1200(a)(7)(i)(A).

34. The onslaught saga of calls continued on November 29, when Plaintiff received a call at 5:45:00 PM, which, as so many of the calls before, was answered by Plaintiff, but was also "abandoned" and was, because of such abandonment, made using a "robodialer." This call also did not play the required information as required under 47 CFR 64.1200(a)(7)(i)(A).

35. Plaintiff finally got a break in the case on November 29 at 7:41:23 PM, when Plaintiff answered a call from the same caller ID as all the previous calls. Plaintiff spent approximately four minutes on this call, which was answered with the same computerized noise indicating call connection, and the sounds of a call center in the background, before an agent of HBW, "Brenda," answered, who said that she was calling "on behalf of *ALLSTATE* insurance."

36. After playing along with "Brenda's" telemarketing script to ascertain the identiy of the caller and for no other reason, "Brenda" admitted that she was calling on "behalf of Allstate insurance," not on behalf of a particular agency. However, "Brenda" stated that Plaintiff would likely receive an e-mail from the "Peter Hughes" Allstate Agency, and that she was with HBW.

37. Further proof that the call received by Plaintiff was a robodialed call was that Plaintiff said, "Hello, this is Andrew," before the agent connected the call, and agent *thought Plaintiff was a different person*, evidently not hearing Plaintiff's greeting, which he said before the computerized "call connected" noise.

38. As a result of the call on November 29, on November 30, 2017, Plaintiff received a call from EIL and the PERNO defendant. During that call, in fact, PERNO confirmed *and admitted* that he *illegally* called Plaintiff *even though he was on a do-not-contact list*, and that he had received a lead from HBW through his Allstate partnership with HBW. In addition, PERNO indicated an understanding of liability as a result of HBW's actions.

39. In each of the 17 calls Plaintiff received, Plaintiff was unable to take additional steps to ascertain the identity of the caller or request to be placed on Defendants' do-not-call list or receive a copy of Defendants' do-not-call policy, a constructive refusal of various portions of requirements under both the Telemarketing Sales Rule and under 47 CFR 64.1200.

40. ALLSTATE is vicariously liable for the calls under the apparent authority standard of

vicarious liability as ALLSTATE, upon information and belief, pays HBW to make calls on ALLSTATE's behalf, and grants BOTH HBW and EIL (1) access to information and systems, (2) the ability of HBW and EIL to enter consumer information into shared databases, (3) the right to market ALLSTATE's products and services under the ALLSTATE brand name, and (4) the authority to use the ALLSTATE name and logo in their advertising, promotions, illegal telemarketing, and Caller name. ALLSTATE is also vicariously liable under the ratification standard of vicarious liability, as ALLSTATE ratified and acquiesced to the activity of HBW and EIL in making the calls and gave permission to use the ALLSTATE brand name in the calls and Caller ID name. ALLSTATE continues to acquiesce to the activity of its agents in violating the TCPA, despite clear flagrant disregard of its Agents' violation of the TCPA and knowledge of a common-fact pattern of local PA agents violating the TCPA (*See* Perrong v. William Novick Agency, USDC EDPA 17-4172). Upon information and belief, ALLSTATE has done *nothing*, not even send out an informative e-mail, regarding TCPA compliance to agents in this area, despite a very real problem in this regard.

41. Plaintiff received the call on his private telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

42. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

43. Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" to transmit a message or make calls. Plaintiff had not consented to be contacted by any Defendant.

44. The telephone Sales Calls therefore violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 CFR 64.1200(a)(7), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR § 64.1200(a)(1)(iii), and 47 C.F.R. 64.1200(c)(2).

## V.     Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

45. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

46. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

47. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

48. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

49. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

50. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**Third Cause of Action**

(Negligent Violation of the TCPA "Call Abandonment"
Prohibition, 47 CFR 64.1200(a)(7))

51. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

52. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(a)(7) Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

**Fourth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Call Abandonment" Prohibition, 47 CFR 64.1200(a)(7))

53. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

54. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(a)(7), Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**Fifth Cause of Action**

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

55. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

56. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

**Sixth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

57. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

58. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**Seventh Cause of Action**

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

59. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

60. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

**Eighth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

61. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

62. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**Ninth Cause of Action**
(Negligence)

63. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

64. Defendants and Defendants' agents violated their duty of care to intended recipients of their telephone sales solicitations by, *inter alia*, breaching the statutory prohibitions against call abandonment, robocalling, and maintenance of a do-not-call list and policy. Plaintiff suffered damages due to Defendants' violation of its duty that caused Plaintiff to answer a telephone call that he otherwise would not have answered, which tied up Plaintiff's telephone line, and wastefully utilized Plaintiff's telephone.

**Tenth Cause of Action**
(Trespass to Chattel)

65. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

66. Defendants and Defendants' agents conduct of telemarketing, robocalling, and Call Abandonment constituted an electronic trespass to Plaintiff's private telephone. This trespass was significant and substantial in duration in that Defendants' trespass illegally deprived Plaintiff of the use and enjoyment of his telephone for lawful purposes. Plaintiff has been damaged in an amount to be determined according to proof at trial.

67. At no time did Plaintiff consent to this trespass.

68. Defendants' trespass was done with oppression and malice, in that Defendants sent their illegal message intentionally, in actual awareness of its illegal nature, with the purpose of making an illicit profit and with the purposes of vexing, injuring and annoying Plaintiff or with a

willful and conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

**Eleventh Cause of Action**
(Conversion)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70. Defendants and Defendants' agents conduct of telemarketing, robocalling, and Call Abandonment constituted a conversion of Plaintiff's private telephone. This conversion was significant and substantial in duration in that Defendants' conversion illegally deprived Plaintiff of the use and enjoyment of his telephone for lawful purposes.

71. Plaintiff is therefore entitled to the entire value of his telephone and service, in an amount to be determined according to proof at trial.

72. At no time did Plaintiff consent to this conversion.

73. Defendants' conversion was done with oppression and malice, in that Defendants sent their illegal message intentionally, in actual awareness of its illegal nature, with the purpose of making an illicit profit and with the purposes of vexing, injuring, and annoying Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**

## VI. Prayer for Relief

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8;

2. For awards of $1,500 for each knowing/willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **$99,000** (Seventeen counts each of: "robocall", failure to put Plaintiff's number on Defendants' Do-Not-Call list, and failure to provide Plaintiff a copy of Defendants' Do-Not-Call policy, and Fifteen counts of call abandonment with treble damages for each.)

For Causes of Action 9-11:

4. Compensatory, general, incidental, and consequential damages according to proof;

5. Punitive and special damages according to proof;

For All Causes of Action:

6. Punitive damages to punish Defendants for their willful, illegal, and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

7. Prejudgment interest at the maximum legal rate;

8. Costs of suit herein incurred; and

9. All such other and further relief as the Court deems proper.

## VII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: **November 30, 2017**

____________________/s/____________________

Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com